IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAMONTE EALY,

                    Plaintiff,

    v.

JAYDEN MCCULLICK, LT. GRATZ,
CAPT. THOMAS TAYLOR, PATRICK HINDMAN,
JOSEPH HARWOOD, MICHAEL FERAN,
SHANE TANNER, and GIAN MAZNETT,

                    Defendants.

OPINION and ORDER

26-cv-444-jdp

---

Plaintiff Lamonte Ealy, proceeding without counsel, is a prisoner at the Wisconsin Secure Program Facility. Ealy alleges that he has been the target of gang violence at the prison and that prison staff have failed to protect him. He also alleges that staff issued him conduct reports in retaliation for complaining about safety concerns and disciplined him for behaviors associated with his mental health conditions. Ealy's complaint is before the court for screening under 28 U.S.C. § 1915 and § 1915A. Ealy also moves for a preliminary injunction ordering defendants to grant him temporary protective confinement or to transfer him to Milwaukee Secure Detention Facility or Dodge Correctional Institution.

Under §1915 and § 1915A, I must dismiss any portion of Ealy's complaint that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. In doing so, I must accept Ealy's allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

I will dismiss Ealy's complaint because I conclude that Ealy hasn't alleged a plausible claim for relief against any of the defendants. I will also deny without prejudice Ealy's motion for preliminary injunctive relief. I will give Ealy a chance to submit an amended complaint.

ALLEGATIONS OF FACT

I draw the following facts from Ealy's complaint, Dkt. 1, and two affidavits, Dkt. 5 and Dkt. 9.

Plaintiff Lamonte Ealy is currently incarcerated at the Wisconsin Secure Program Facility (WSPF). Defendant Jayden McCullick is WSPF's security director. Defendant Thomas Taylor is a security captain. The remainder of the defendants are prison staff, though Ealy doesn't identify their specific job titles.

Ealy has been a target of gang violence within Wisconsin's prison system for many years. In 2014, he was assaulted by two gang members in the Milwaukee County jail. In 2020, he was the victim of an attempted stabbing in his cell at Waupun Correctional Institution. In 2021, he was granted a security transfer to Green Bay Correctional Institution, and in 2024, he was transferred to the Wisconsin Secure Program Facility (WSPF). But "word has travelled" and "it is the same issues" at WSPF.

After arriving at WSPF, Ealy managed to keep himself safe for the first year by eating meals in his cell and avoiding mass movements. But in June 2025, an inmate put a substance into Ealy's food, which caused "sensations" in Ealy's brain and "needle pains" in Ealy's feet and stomach. Ealy submitted a request for protective confinement and was placed in temporary lock-up status for a short time. But then defendant Jayden McCullick denied Ealy's request for protective confinement and sent him back to general population.

Ealy began to receive conduct reports for actions that he took to protect his safety. In September 2025, defendant Patrick Hindman wrote Ealy a conduct report because Ealy refused to lock into his cell due to safety concerns. Defendant Thomas Taylor placed Ealy into disciplinary segregation as a punishment, even though Ealy explained that his actions were motivated by safety concerns. In October, Taylor, McCullick, and defendant Lieutenant Gratz wrote Ealy another conduct report for covering his cell window with a towel, even though Ealy told them he did it to protect his safety. Ealy also complained to defendant Joseph Harwood that he was concerned about his safety, and Harwood did nothing to protect him.

When Ealy's disciplinary segregation ended, Ealy did not want to return to general population because of his safety concerns. Gratz told Ealy: "Just refuse to leave. You'll get a conduct report, but you won't get an extra violation for disruptive conduct in G.P." Following Gratz's advice, Ealy refused to return to general population in November 2025, January 2026, and March 2026. Defendants Michael Feran, Shane Tanner, and Gian Maznett wrote him conduct reports for disobeying orders, even though they knew that Ealy was motivated by safety concerns.

While Ealy has been in segregation, gang members have continued to sneak substances into his food, which Ealy knows about because he has experienced the same symptoms. As a result, Ealy has avoided eating any mixed foods on his food trays.

Before the safety problems started, Ealy had managed to obtain a downgrade from maximum to medium custody status. But because of the conduct reports he received, the DOC used a discretionary override to keep him in maximum custody.

ANALYSIS

Ealy asserts claims under 42 U.S.C. § 1983, contending that the defendants failed to protect him from serious risk of harm from fellow inmates, in violation of the Eighth Amendment, and that they retaliated against him for complaining about safety concerns, in violation of the First Amendment. Ealy also brings a failure to accommodate claim under the Americans with Disabilities Act (ADA), contending that defendants gave him conduct reports for behavior that was driven by his mental health conditions.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The primary purpose of Rule 8(a)(2) is to give each defendant fair notice of what he or she is alleged to have done to violate the plaintiff's rights. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint also "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible if there are enough facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Before turning to Ealy's specific claims, I note one preliminary problem with his complaint. Under Rule 8(d), the allegations in a complaint must be "simple, concise, and direct." The rule does not require any specific technical form, but many litigants use numbered paragraphs, and that is typically a useful format. Ealy uses numbered paragraphs in his complaint, but each individual paragraph is very long, sometimes up to several pages, with numerous allegations about different defendants jumbled together. The length of the complaint and the lack of organization make it difficult to follow what Ealy is saying. When Ealy submits

4

his amended complaint, he should take care to ensure that his allegations are simple, concise, and direct, so that the court and the defendants can understand what he is saying.

## A. Failure to protect

In certain circumstances, prison officials may be liable under the Eighth Amendment if they fail to protect a prisoner from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state a failure-to-protect claim, a plaintiff must allege that: (1) he faced a substantial risk of serious harm; and (2) the defendants consciously disregarded that risk. *Id.* at 834. Conscious disregard means that the defendant was aware of facts that would support an inference that the inmate is at risk of serious harm, and the defendant actually drew that inference. *Id.* at 837.

Ealy's failure-to-protect claims have two problems. First, Ealy has not alleged facts sufficient to create a reasonable inference that he faced a substantial risk of serious harm. Ealy says that he was a target of gang violence when he was incarcerated in other prisons and that he has been having the "same issues" since being transferred to WSPF. But most of Ealy's allegations about the threats he has experienced at WSPF are too vague to allow for a reasonable inference that he is at risk of serious harm. For instance, Ealy alleges generally that he "learned of an assault plot" against him at WSPF, Dkt. 1, at 3, and that he has "received threats." Dkt. 5, ¶ 8. But he doesn't describe who threatened him, when they threatened him, or what they said.

Ealy makes only one specific allegation about a risk to his safety: he says that inmates have been putting substances in his food and that he has experienced "sensations" in his brain and "needle pains" in his feet and stomach as a result. But I cannot infer that Ealy is at substantial risk of serious harm from these allegations either, because Ealy doesn't say how he

knows that there are substances in his food or how he knows that his symptoms were caused by the food. Without further explanation, I cannot reasonably infer that Ealy is at risk of serious harm from inmates tampering with his food.

Second, even if Ealy had alleged a substantial risk of serious harm, his allegations don't plausibly suggest that any of the defendants were aware of that risk. Ealy says generally that he told the defendants about his safety concerns, but he doesn't say what specifically he told each individual defendant or when. Without knowing the specifics of what Ealy told each defendant, I cannot infer that any of them consciously disregarded a substantial risk of serious harm to Ealy.

## B.   Retaliation

Ealy says that defendants Hindman, Harwood, Feran, Tanner, and Maznett wrote Ealy conduct reports in retaliation for Ealy voicing concerns about his safety, in violation of his First Amendment rights. To state a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in the defendant's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). But even if a plaintiff alleges these elements, a retaliation claim fails if the allegations affirmatively establish that the defendant acted for a legitimate penological reason. *Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015); *see also Wright v. Funk*, 853 F. App'x 22, 24–25 (7th Cir. 2021) (retaliation claim involving conduct report failed because the defendant had a legitimate reason for writing a conduct report).

6

I will not allow Ely to proceed on First Amendment retaliation claims against Hindman, Feran, Tanner, and Maznett, because it is clear from Ely's allegations that they acted for a legitimate reason. Prison officials have a legitimate penological interest in promoting order and obedience among prisoners. *See Cobian v. McLaughlin*, 717 F. App'x 605, 612 (7th Cir. 2017). Ely alleges that Hindman wrote him a conduct report after he refused to lock into his cell, and that Feran, Tanner, and Maznett wrote him conduct reports after he refused to move from restricted housing back to general population. These allegations affirmatively establish that defendants had legitimate reasons to write Ely conduct reports based on Ely's admitted disobedience.

Ely's retaliation claim against Harwood fails for a different reason: Ely has not alleged that Harwood ever wrote him a conduct report. Individual liability under 42 U.S.C. § 1983 requires personal involvement in the alleged constitutional deprivation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Ely has not alleged that Harwood was personally involved in writing a retaliatory conduct report.

## C. Failure to accommodate

Finally, Ely contends that defendants violated the Americans with Disabilities Act by giving him conduct reports for behavior that was caused by his mental illnesses, which he describes as "anxiety, PTSD, paranoia." Dkt. 1, at 4. Title II of the ADA provides that qualified individuals with disabilities may not "by reason of . . . disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity." 42 U.S.C. § 12132. "State prisons fall squarely within the statutory definition of 'public entity,'" *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998), and state prison officials can be sued under the ADA for declaratory and injunctive relief, *Radaszweski ex rel. Radaszewski v. Maram*, 383 F.3d

599, 606 (7th Cir. 2004). However, given the uncertainty about the availability of damages under Title II, the Court of Appeals for the Seventh Circuit has suggested replacing a prisoner's ADA claim with a parallel claim under the Rehabilitation Act, 29 U.S.C. § 701, where damages are available against a state that accepts federal assistance for prison operations, as all states do. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). Accordingly, I will address Ealy's claim as one under the Rehabilitation Act, not the ADA.

To state a failure-to-accommodate claim under the Rehabilitation Act, Ealy must allege that "'(1) he is a qualified person (2) with a disability and (3) [the defendant] denied him access to a program or activity because of his disability.'" *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quoting *Jaros*, 684 F.3d at 672). Ealy's allegations are not entirely clear, but he appears to be saying that his mental illness caused him to experience anxiety and paranoia about his safety, that he disobeyed orders as a result, and that the defendants punished this behavior by issuing him conduct reports. These allegations contradict his Eighth Amendment claims somewhat, because they suggest that Ealy acted out of paranoia driven by mental illness and not out of justified concerns for his safety. But litigants are allowed to plead in the alternative, *see* Fed. R. Civ. P. 8(e)(2), so the apparent inconsistency between Ealy's failure-to-accommodate claims and his Eighth Amendment claims does not pose a problem at this point.

Nevertheless, I will not allow Ealy to proceed on failure-to-accommodate claims, because the accommodation that he says prison staff should have given him is unreasonable. In the prison context, the reasonableness of an accommodation "must be judged in light of the overall institutional requirements. Security concerns, safety concerns, and administration exigencies would all be important considerations to take into account." *Hildreth v. Butler*, 960

F.3d 420, 431 (7th Cir. 2020) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996)). Ealy appears to be saying that prison staff should not have been allowed to discipline him for refusing to lock into his cell and for refusing to leave segregated housing, because his mental illness drove him to do those things. But an inability to enforce prison rules, particularly rules about where inmates are allowed to be at different times, would threaten prison security and safety. The Rehabilitation Act does not require prison officials to apply these rules differently because a prisoner is suffering from mental illness. *Cf. O'Guinn v. Nevada Dep't of Corr.*, 468 F. App'x 651 (9th Cir. 2012) (prisoner's claims that he was punished for manifesting symptoms of mental illness were more appropriately viewed as medical negligence claims, not as disability discrimination or failure-to-accommodate claims).

CONCLUSION

I will dismiss Ealy's current complaint, but I will give him a short time to file an amended complaint fixing the pleading problems I have identified in this order. In doing so, Ealy should take care to do the following:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally cause or participate in a violation his rights. Ealy must take care to allege what each defendant did, or failed to do, to violate his rights.

- Avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that Ealy believes supports a claim, he should identify each defendant who took that action.

If Ealy fails to submit an amended complaint by the deadline set below, I will dismiss the entire case. *See Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

Ealy has also moved for a preliminary injunction ordering defendants to grant him temporary protective confinement or to transfer him to Milwaukee Secure Detention Facility

or Dodge Correctional Institution. *See* Dkt. 1, at 8. Because I am not allowing Ealy to proceed on any claims related to his safety concerns, I will also deny his motion for a preliminary injunction. *See Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (party must make a strong showing that he is likely to succeed on the merits to obtain preliminary injunctive relief); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (party must show a relationship between the injunctive relief sought and his claims).

Ealy may renew his request for a preliminary injunction when he submits his amended complaint. If he chooses to do so, he should ensure that he is complying with the court's procedures for obtaining preliminary injunctive relief, which I will provide to him along with this order. Those procedures require Ealy to file proposed findings of fact that support his claims, along with affidavits or other evidence that supports those proposed findings.

### ORDER

IT IS ORDERED that:

1.  Plaintiff's complaint, Dkt. 1, is DISMISSED.

2.  Plaintiff's motion for a preliminary injunction, Dkt. 1, is DENIED without prejudice.

3.  Plaintiff may have until August 19, 2026, to submit an amended complaint.

4.  The clerk of court is directed to send Ealy a copy of this court's procedures for obtaining preliminary injunctive relief along with this order.

Entered July 29, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

10